UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TABATHA ANN DAWSON,

    Petitioner,

v.

    CASE NO. 13-13456
    HONORABLE JOHN CORBETT O'MEARA

MILLICENT WARREN,

    Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Petitioner Tabatha Ann Dawson has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. She is challenging a retail fraud conviction on grounds that: (1) she was denied due process and an impartial jury when the jury found her guilty in less than sixteen minutes; (2) there was insufficient evidence to convict her; (3) her pre-sentence information report contains significant errors; and (4) the trial court's reasons for exceeding the sentencing guidelines were not based on objective and verifiable facts, and the court's departure from the guidelines was disproportionate to the crime. Respondent Millicent Warren urges the Court through counsel to deny the petition. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

**I. Background**

Petitioner was charged in Wayne County, Michigan with first-degree retail fraud, Mich. Comp. Laws § 750.356c. The charge arose from allegations that Petitioner aided and abetted three other women in stealing over $1,000.00 worth of clothing from a retail store in Livonia, Michigan.

**A. Prosecution Witnesses**

Anna Roman testified at Petitioner's jury trial in Wayne County Circuit Court that she was working as a department manager at the Von Maur store in Livonia on October 1, 2010. Shortly after 4:00 p.m. that day, she left the young men's department to assist Petitioner in the men's sportswear department, which was across from her department. Petitioner questioned her about a clothing size that the store did not carry. Petitioner had two children with her, and as Petitioner continued to question Ms. Roman about the clothing, another woman came up to them and informed Petitioner that their mother was sick and that they had to leave. Petitioner and the other woman then left the store quickly, and when Ms. Roman returned to her own department, she noticed that some jeans, which ranged in price from $150 to $300, were missing. The store's loss prevention department subsequently returned the jeans to her.

Michele Stojanoska testified that she was working as a loss prevention associate in the Von Maur store at approximately 4:09 p.m. on October 1, 2010. She noticed three or four women looking around suspiciously in the young men's department. She saw one of the women take a stack of jeans and go to the back of the department. She saw two other women shove the jeans into a plastic garbage bag. At the same time, she saw Petitioner in the sportswear department speaking with Anna Roman, whose

back was to the three people who were shoving items into the garbage bag. She (Ms. Stojanoska) heard one of the women say, "Let's go." The three women then walked out the door. Petitioner followed them after saying, "Okay, never mind. Bye." Ms. Stojanoska saw two loss prevention associates, Justin Candela and George Hall, pursue the four suspects. Later, she saw George Hall carrying the garbage bag as the suspects left in a black Durango. Back in the store, they found fifteen pairs of jeans with a total value of $2,979.00 in the bag.

On cross-examination, Ms. Stojanoska admitted that she never saw Petitioner touch or carry any merchandise, and she did not see Petitioner interact with, or signal, the other women until they all walked out together. On re-direct examination, Ms. Stojanoska said that Petitioner's conduct was consistent with a distraction tactic and that the other individuals were looking at Petitioner and Ms. Roman during the incident.

Justin Candela testified that he was employed as a loss prevention associate at the Von Maur store in Livonia on October 1, 2010. At about 4:09 p.m., he noticed on a monitor one suspect pick up an entire stack of jeans from a table in the store's young men's department and take the jeans to the back of the department where two other suspects put the jeans in a bag. Another suspect grabbed a stack of jeans off a rack and put them in the bag. One suspect (Keisha Price)[1] left the store with the garbage bag of jeans without offering to pay for them. He followed Keisha outside and saw her run to a black Dodge Durango. He identified himself and told Keisha to drop the bag. He recovered the bag as Keisha dropped it and as the rest of the suspects, including

---

[1] This person's first name is spelled various ways in the transcript of trial. The Court has adopted Petitioner's spelling of the name.

Petitioner, ran out of the store. He informed the suspects that he was in contact with the police, that the police would be there shortly, and that they should remain there, but the four women and two children got in the Durango and drove away.

George Hall was working with Justin Candela as a loss prevention associate at the Von Maur store on October 1, 2010. He corroborated Justin's testimony and also admitted that he did not see Petitioner touch any store merchandise.

Michael Lewallen was employed by the Livonia Police Department on October 1, 2010. He testified that, about 4:10 p.m. that day, he initiated a traffic stop after noticing a black Dodge Durango that matched a vehicle described in a dispatch given over the air. The Durango accelerated at first, but ultimately stopped. Yolanda Price was driving the vehicle, Petitioner was the front-seat passenger, and two other women (Keisha Price and Diamond Williams) plus two children were in the back seat. Petitioner owned the vehicle, and she had $672.26 in her pocket when she was booked at the police station.

## B. The Defense, Verdict, Sentence, and Appeal

At the close of the prosecution's proofs, Petitioner moved for a directed verdict of acquittal on the ground that there was insufficient evidence that she participated in the crime or encouraged others to commit the crime. She argued that she was merely present. The trial court denied the motion after concluding that there was enough circumstantial evidence that Petitioner aided and abetted the crime.

The sole defense witness was Keisha Price, who testified that she was charged in the case but that her case was under diversion. Continuing, Keisha explained that

Petitioner and Yolanda Price were her cousins, that Diamond Williams was her friend, and that the two children in the group were Yolanda's children. She said that the group went to the Von Maur store on October 1, 2010, because Petitioner wanted to buy a shirt for her stepfather and the other women wanted to ride along with her. Keisha stated that, once they got to the store, Petitioner said that she was going to buy a shirt. Keisha then agreed to help Yolanda Price steal some jeans. They put the jeans in a garbage bag that Yolanda had brought in her pocket, but she (Keisha) dropped the bag when a security officer confronted her. Later, when they got in Petitioner's vehicle, Petitioner asked the other women what they had done, and the women then admitted that they had been stealing. The police subsequently stopped them.

The prosecutor's theory was that Petitioner aided and abetted the women who stole the jeans by acting as a decoy to distract the store clerk. The defense theory was that Petitioner was not involved in the theft.

On April 26, 2011, after approximately sixteen minutes of deliberations, the jury found Petitioner guilty, as charged, of first-degree retail fraud. On May 26, 2011, the trial court sentenced Petitioner as a habitual offender to imprisonment for fifty-eight months (four years, ten months) to fifteen years.

Petitioner appealed her conviction to the Michigan Court of Appeals and moved to remand her case to the trial court for a hearing on errors in her pre-sentence information report and for re-sentencing on the corrected information. The Court of Appeals granted Petitioner's motion, and, on remand the trial court corrected the pre-sentence report and re-sentenced Petitioner to the same sentence of fifty-eight months

to fifteen years. The Michigan Court of Appeals subsequently affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *See People v. Dawson*, No. 304573 (Mich. Ct. App. Sept. 11, 2012). On January 25, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Dawson*, 493 Mich. 930; 825 N.W.2d 72 (2013) (table decision).

**C. The Habeas Petition and Responsive Pleading**

Petitioner filed her habeas corpus petition on August 13, 2013. As noted above, she claims that: (1) the jury's quick verdict deprived her of due process and an impartial jury; (2) there was insufficient evidence at trial to convict her; (3) her pre-sentence information report contains significant errors; and (4) the trial court erred when departing from the sentencing guidelines and giving her a minimum sentence disproportionate to the crime. Respondent argues in an answer to the habeas petition that: (1) Petitioner's first claim is procedurally defaulted and meritless; (2) the second claim is meritless, and the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent; (3) Petitioner's third claim is moot, and habeas relief is not warranted; and (4) Petitioner's fourth claim is not cognizable on habeas review, and her constitutional argument is unexhausted and meritless.

The rule requiring exhaustion of state remedies, 28 U.S.C. § 2254(b)(1), is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Similarly, "a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S.87, 89 (1997). The Court, moreover, has determined that Petitioner's claims lack substantive merit. The Court therefore

6

proceeds directly to the merits of Petitioner's claims, using the following standard of review.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Analysis

#### A. The Jury's Verdict

Petitioner alleges that she was denied due process of law and her right to an impartial jury when the jury found her guilty in less than sixteen minutes. Petitioner claims that sixteen minutes was an insufficient time for the jury to consider and follow the trial court's instructions and evaluate the parties' theories.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting substantial rights" because Petitioner did not preserve the issue for appellate review by objecting in the trial court. The Court of Appeals then noted that, under state

law, "it has long been held that the amount of time the jury spends deliberating is not relevant." *Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *1. The Court of Appeals concluded that Petitioner "was not denied due process because of the jury's 16-minute period of deliberation." *Id*.

### 1. Legal Framework

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI. This right "is applicable to the states via the Fourteenth Amendment." *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citing *Turner v. Louisiana*, 379 U.S. 466 (1965), and *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

"Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The failure to accord an accused a fair hearing before a panel of impartial, indifferent jurors violates even the minimal standards of due process. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). But "juries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and

> [b]efore attaching great significance to the short time the jury took for deliberations, [courts] must have reason to suspect that the jury in some way disregarded its instructions or otherwise failed in its duty. A brief deliberation cannot, alone, be a basis for an acquittal.

*United States v. Cunningham*, 108 F.3d 120, 124 (7th Cir. 1997); *see also United States v. Weintraub*, 613 F.2d 612, 616 n.10 (6th Cir. 1979) (finding no merit in the appellant's

9

argument "that he was denied due process because the jury deliberated only 150 minutes").

### 2. Application

Here, the trial court excused the jurors to begin their deliberations at 11:45 a.m. on the second and final day of trial. (Trial Tr., Vol. II, 68-69, Apr. 26, 2011). By 11:49 a.m., the jurors were asking for the verdict form, *id.* at 71-72, and, at 12:01 p.m., the trial court announced to the prosecutor and defense counsel that the jury had reached a verdict. The trial court followed its announcement with this comment: "I don't know if they were out ten minutes. I'm not sure they were, but I guess they have a verdict." *Id.* at 73. At 12:02 p.m., the jury returned to the courtroom and confirmed that they had reached a verdict. *Id.* at 74.

The record, as summarized in the preceding paragraph, indicates that the jury reached its verdict in sixteen minutes or less. Petitioner, however, has not cited any case law, let alone any Supreme Court decision, to support her argument that the speed with which the jury reached its verdict violated her right to due process and an impartial jury. Furthermore, the fact that the jury reached a verdict in sixteen minutes or less does not mean that the jury did not follow the trial court's instructions on the law or that

> the verdict was not the product of considered judgment and due deliberation. If the jury carefully followed the evidence and arguments of counsel, there is no reason to suspect it could not reach [a] decision in that amount of time.

*Haidy v. Szandzik*, 46 Mich. App. 552, 555-56; 208 N.W.2d 559, 561 (1973). This is particularly true here where there was only one charge, no lesser-included charges to

consider, a short and simple trial with only six witnesses, and substantial evidence of Petitioner's guilt.

The Michigan Court of Appeals reasonably concluded that the jury's quick decision did not deprive Petitioner of due process. Therefore, habeas relief is not warranted on Petitioner's first claim.

## B. The Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to convict her of retail fraud because there was no more than a reasonable suspicion that she aided and abetted the participants in the crime or that she knew of their plan to steal merchandise. The Michigan Court of Appeals disagreed with Petitioner and held that there was sufficient evidence at trial that Petitioner aided and abetted others in committing a first-degree retail fraud.

### 1. Clearly Established Law

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

Circumstantial evidence is sufficient to support a criminal conviction even though proof beyond a reasonable doubt is required. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). " 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.' " *Id*. (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17 (1957)).

**2. Application**

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n. 16. In Michigan, "[t]he elements of first-degree retail fraud are that, while a store is open to the public, a person steals property of the store that is offered for sale at a price of $1,000 or more." *Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *1 (citing Mich. Comp. Laws § 750.356c(1)(b)). Petitioner does not dispute that the prosecutor proved these elements of the offense. Rather, she contends that there was no proof beyond a reasonable doubt that she did anything to support the three women who stole the jeans from the store.

"Aiding and abetting" in Michigan,

> "describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. . . . To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime."

*People v. Carines*, 460 Mich. 750, 757-58; 597 N.W.2d 130, 135 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 568-69; 540 N.W.2d 728, 733-34 (1995)). One must be more than merely present to aid and abet. *People v. Doemer*, 35 Mich. App. 149, 152; 192 N.W.2d 330, 332 (1971).

The trial court described the evidence of Petitioner's guilt as "overwhelming and manifest," Sentence Tr. at 11 (May 26, 2011), and the Michigan Court of Appeals determined that there was sufficient circumstantial evidence to convict Petitioner of aiding and abetting first-degree retail fraud. In reaching this decision, the Court of Appeals noted that:

> defendant lured the sales clerk away from the young men's department where the theft occurred to the sportswear department. Even after the sales clerk told defendant that the store did not carry shirts in size XXL, defendant persisted in asking questions about shirts and directed the sales clerk further away from the young men's department. During this time, store loss prevention associates observed three women in the young men's department stuffing stacks of expensive jeans into a plastic garbage bag. Defendant was prompted to leave the store when one of the thieves told her that her mother was ill. Defendant left abruptly without asking questions about her mother's health. She walked quickly out of the store and, once outside, ran to a Durango. Defendant left in the Durango even after store security told the group to stop and that police were on the way.
>
> Loss prevention officers testified that the three shoplifters were observed scanning the store for surveillance cameras and associates. Although there was normally an associate in the young men's department, she was distracted by defendant into another department. Loss prevention officers testified that it was common for shoplifters to distract a sales associate away from expensive merchandise.

*Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *2.

A rational trier of fact could have concluded from this evidence taken in the light most favorable to the prosecution that Petitioner aided and abetted the three women

who stole the jeans from the store. She had a close association with the women, she appeared to distract the sales clerk while the three other women took the jeans, she exited the store at the same time as the other women, and she left in the same vehicle as the other women even though they were ordered to stop and wait for the police.

The Michigan Court of Appeals reasonably concluded that the evidence at trial was sufficient to sustain the jury's verdict. Because the state court's decision was not contrary to, or an unreasonable application of, *Jackson,* Petitioner is not entitled to relief on the basis of her second claim.

## C. The Pre-sentence Information Report

In her third claim, Petitioner alleges that she is entitled to have her pre-sentence information report corrected because it contains significant errors that would have had a negative impact on the trial court and the parole board. Petitioner asserts that she was not given an opportunity to examine the pre-sentence information report until after her sentencing, and, when she did read it, she discovered two errors.

The first alleged error consists of a statement which reads: "She [Petitioner] stated she did know her sister was lying about their mother and that her sister had stolen anything." Petitioner asserts that the word "not" is missing from this sentence and that it should read: "She stated she did *not* know her sister was lying about their mother and that her sister had stolen anything."

The second error pertains to Petitioner's history of substance abuse. The pre-sentence report states that Petitioner used opiates and cocaine from 1981 to 2010.

Petitioner says this is not true and that it is not logically possible because she was in prison from December 5, 2005, until April 20, 2010.

The state-court record indicates that the trial court corrected the alleged errors in Petitioner's pre-sentence information report on remand from the Michigan Court of Appeals. See Post-Conviction Tr. at 22-23, Feb. 13, 2012; *People v. Dawson*, No. 10-011399-FH, Order for Correction of Defendant's PSIR and Resentencing (Wayne Cnty. Cir. Ct. Feb. 15, 2012). The trial court then re-sentenced Petitioner on the basis of the corrected report and gave her 306 days of sentencing credit. See Post-Conviction Tr. at 13-14, Feb. 29, 2012. Because the state court corrected the errors, this Court lacks the ability to provide any meaningful relief, and Petitioner's challenge to the information in her pre-sentence report is moot.[2] The Court therefore rejects Petitioner's third claim.

## D. The Sentence

In her fourth and final claim, Petitioner points out that the trial court exceeded the state sentencing guidelines for her minimum sentence by twelve months. Petitioner contends that the trial court's reasons for exceeding the sentencing guidelines were not based on objective and verifiable facts and that the sentence was disproportionate to the crime. The Michigan Court of Appeals disagreed and concluded that the trial court

---

[2] The claim was moot even before the Michigan Court of Appeals issued its dispositive decision on direct appeal. The Court of Appeals acknowledged the claim and then wrote:

> We remanded this matter to the trial court for the limited purpose of correcting errors in the PSIR. *People v. Dawson*, unpublished order of the Court of Appeals issued January 18, 2012 (Docket No. 304573). In light of the trial court's compliance with the remand order, we need not address this issue.

*Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *2 n.1.

adequately articulated its reason for departing from the guidelines and did not abuse its discretion.

This Court finds no merit in Petitioner's claim because the state trial court's application of state sentencing laws and guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Furthermore, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

Petitioner's sentence was not grossly disproportionate to the crime for the reasons given by the trial court. First, Petitioner's criminal history went back twenty-five years and included, among other things, two armed robbery convictions, a larceny conviction, a felonious assault conviction, and two misdemeanor retail fraud convictions. The trial court described Petitioner as "a hopeless case," and "a serial offender, serial felon, a serial thief and a serial assailant." (Sentence Tr., 14, May 26, 2011). The Michigan Court of Appeals subsequently determined that "[t]he trial court was entitled to conclude that the guidelines did not adequately take into account [Petitioner's] lengthy prior criminal history." *Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *3.

A second reason that Petitioner's sentence was not grossly disproportionate is that she involved two innocent children in the crime, using them as decoys and

introducing them to the world of crime. As the trial court recognized, this was detrimental to the children's well-being and future, and it is showed "an utter and complete lack of respect and responsibility to those children, and . . . to society as a whole." (Sentence Tr. at 15, May 26, 2011). Furthermore, according to the trial court, there was nothing in the sentencing guidelines that took into account the way Petitioner used those two children to effect the commission of her crime. *Id.* The Michigan Court of Appeals agreed that the two children were victims of the crime[3] and that their presence was not considered in the guidelines.

Petitioner claims that the children were not her children and that she, in fact, separated the children from the criminal activity of their mother whose idea it was to steal the jeans. The Michigan Court of Appeals, however, correctly recognized that Petitioner consented to the children's presence with her and, therefore, she was as responsible for them as their mother. The Court of Appeals concluded that the trial court did not abuse its discretion in finding that the children's presence was a substantial and compelling reason to depart from the guidelines.

Given Petitioner's use of children to help her commit a crime, and given her lengthy criminal history, her sentence was not disproportionate to her crime. Therefore, she is not entitled to relief on the basis of her fourth and final claim.

### IV. Conclusion

The Michigan Court of Appeals adjudicated Petitioner's second claim (insufficient evidence) and her fourth claim (disproportionate sentence) on the merits and rejected

---

[3] The Court of Appeals noted that the children "were forced to run from security staff, get into a car against security staff orders, and leave, only to be stopped by police minutes away. . . ." *Dawson*, Mich. Ct. App. No. 304573, 2012 WL 3966272, at *3.

the claims. The state court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Consequently, the Court may not grant habeas relief on those issues.

The Michigan Court of Appeals did not adjudicate the merits of Petitioner's other claims, but those claims likewise do not warrant habeas relief. Petitioner has failed to show that her first claim regarding the jury's verdict violated her right to due process or an impartial jury, and her third claim regarding alleged errors in the pre-sentence report is moot. The Court therefore denies Petitioner's application for the writ of habeas corpus.

## V.  Denying a Certificate of Appealability, but Granting Leave to Proceed *In Forma Pauperis* on Appeal

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 327.

For the reasons given above, reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. Nor would reasonable jurists

conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to issue a certificate of appealability on any of Petitioner's claims.

The standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the standard for certificates of appealability.  *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if the issues are not frivolous and the appeal is taken in good faith.  *Id.* at 764-765; 28 U.S.C. § 1915(a)(3).   Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous.  Therefore, an appeal could be take in good faith and Petitioner may proceed *in forma pauperis* on appeal if she chooses to appeal this decision.

Date: January 22, 2016                                         s/John Corbett O'Meara
                                                               United States District Judge


I hereby certify that on January 22, 2016 a copy of this opinion and order was served upon the parties of record using the ECF system and/or first-class U.S. mail.

                                                               s/William Barkholz
                                                               Case Manager